IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                          **CRIMINAL NO. 1:19CR56**
                                      **(Judge Keeley)**

**TIMOTHY ROCK,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL [DKT. NO. 54]**

Following a three day trial, a jury convicted the Defendant, Timothy Rock ("Rock"), on four separate counts of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Dkt. No. 45). Rock now seeks a new trial or, in the alternative, a judgment of acquittal as to Count One of the Indictment (Dkt. No. 54). For the following reasons, the Court **DENIES** Rock's motion.

### I. BACKGROUND

Count One of the Indictment charged Rock with distribution of heroin (Dkt. No. 1), as follows:

> On or about July 20, 2016, in Harrison County, in the Northern District of West Virginia, defendant TIMOTHY ROCK, did unlawfully, knowingly, intentionally, and without authority distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, to a person known to the Grand Jury; in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Allegedly, Rock distributed heroin to a confidential

informant, Christopher Manuel ("Manuel"), following a controlled drug buy Manuel made from a heroin dealer named Charles Whitaker ("Whitaker"). The evidence at trial regarding Count One included testimony from numerous witnesses called by the government, as well as a controlled buy voucher, a controlled buy report, and a criminal complaint filed against Whitaker.

During Rock's trial, the government contended that the July 20, 2016 controlled buy was conducted under Rock's direction in his capacity as a sheriff's deputy for the Harrison County, West Virginia Street Crimes and Drug Unit ("SCAD Unit"). It also asserted that Rock paid Manuel for his work as a confidential informant with some of the heroin stamps Manuel obtained from Whitaker (Dkt. No. 50 at 22). Importantly, the government's theory of the case distinguished between the initial distribution of heroin from Whitaker to Manuel, and the subsequent distribution of heroin from Rock to Manuel following the completion of the controlled buy between Whitaker and Manuel.

Following his conviction on Count One, Rock moved for a new trial or judgment of acquittal on December 30, 2019 (Dkt. No. 54). The government filed its response opposing Rock's motion on January 14, 2020 (Dkt. No. 57). Rock did not file a reply.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL [DKT. NO. 54]**

## II. LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 33, a court may vacate a criminal conviction and grant a new trial "if justice so requires." However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it." United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006).

Federal Rule of Criminal Procedure 29(c) provides that, on a defendant's motion, a court may "set aside" a jury verdict and "enter an acquittal." A defendant who challenges the sufficiency of the evidence under this Rule faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt." Id. (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).

When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether 'there is substantial evidence, taking the view most favorable to

3

the government, to support it.'" Beidler, 110 F.3d at 1067 (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). In other words, the Court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

### III. DISCUSSION

Rock challenges the sufficiency of the government's evidence, arguing that the outcome in this case turns on the meaning of the term "distribute" (Dkt. No. 54 at 3). He contends that any "acquiescence" to Manuel's retention of some of the heroin obtained from Whitaker during the controlled buy does not constitute distribution because he did not "participate" in the transfer of heroin to Manuel. Id.

In order to convict Rock of distributing a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) as charged in Count One, the government was required to prove the following three (3) elements beyond a reasonable doubt:

<u>One</u>:   The defendant, Timothy Rock, distributed the controlled substance alleged in the Indictment;

<u>Two</u>:     The defendant, Timothy Rock, did so knowingly; and

<u>Three</u>:   The defendant, Timothy Rock, did so intentionally. 21 U.S.C. § 841(a)(1); <u>United States v. Randall</u>, 171 F.3d 195, 209 (4th Cir.) (reciting three elements).

When viewed in the light most favorable to the government, Rock's conviction on Count One is entirely supported by the evidence adduced at trial. A jury could have found that Rock distributed heroin to Manuel on July 20, 2016, by giving heroin to Manuel directly, by transferring his constructive possession of heroin to Manuel, or by creating the means by which Manuel was able to keep heroin after the buy.

According to Rock, the government's theory at trial was that Rock had permitted Manuel to "pinch," or keep, a portion of the drugs he purchased from Whitaker (Dkt. No. 54 at 1-2). However, the evidence at trial actually supported two possible theories of distribution: either (1) that Rock had permitted Manuel to pinch stamps after the July 20, 2016 controlled buy; or (2) that Rock gave Manuel some of the heroin stamps turned over from the Whitaker buy (Dkt. No. 50 at 854-56).

As to Count One, Whitaker's testimony established that he sold Manuel ten or twelve heroin stamps (Dkt. No. 50 at 230-31), while

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL [DKT. NO. 54]**

Manuel testified that he purchased between twelve to fifteen heroin stamps during the July 20, 2016 controlled buy. Id. at 136. The payment vouchers for the controlled buy documented that heroin had been purchased for $120.00, an amount generally indicative of a buy of twelve stamps (Government's Exhibit Two; Dkt. No. 50 at 52, 65, 125, 216, 219, 291, 337). Rock's fellow SCAD Officer, Zach Hutson ("Hutson"), testified that he turned over to Rock a taped-together "bun" of ten stamps he received from Manuel after the buy (Dkt. No. 50 at 215-16). From this evidence, a jury could reasonably have found that Manuel kept as many as five heroin stamps from the Whitaker buy before he turned over the remainder to Hutson.

Significantly, after the controlled buy, Rock completed a report indicating that Manuel had purchased "approximately 8 heroin stamps" (Government's Exhibit Three; Dkt. No. 50 at 73). He also completed a criminal complaint alleging that Whitaker had sold "1 bundle of heroin (8 individually packed stamps with a star)" (Government's Exhibit Six; Dkt. No. 50 at 77, 113). Thus, when viewed in the light most favorable to the government, there was sufficient evidence adduced at trial from which a jury could find that Rock physically gave Manuel some of the heroin from the ten stamps Rock received from Hutson.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR NEW TRIAL OR JUDGMENT OF ACQUITTAL [DKT. NO. 54]**

There also was sufficient evidence of distribution by constructive transfer based on Rock's "acquiescence" in permitting Manuel to keep a part of the heroin from Whitaker before turning the remainder over to the SCAD Unit. To "distribute[1] means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11) (internal quotations omitted). "[D]eliver or delivery mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." § 802(8) (quotations omitted).

Distribution has been held to criminalize "participation in the [drug] transactions viewed as a whole," United States v. Pruitt, 487 F.2d 1241, 1245 (8th Cir. 1973), and such participation may consist of the transfer of constructive possession. United

---

[1] Although the Fourth Circuit has not addressed the exact factual circumstances presented in this case, it and other circuits have defined "distribution" broadly. See United States v. Randall, 171 F.3d 195, 209 (4th Cir. 1999) (noting that possession is not necessarily an element of distribution); United States v. Sepulveda, 102 F.3d 1313, 1316 (1st Cir. 1996) (explaining that someone who participates in a drug transfer - e.g. as a broker or armed guard - can be liable for distribution); United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994) (concluding that sharing drugs with a third party may constitute distribution); United States v. Brunty, 701 F.2d 1375, 1381 (11th Cir. 1983) (collecting cases involving distribution under § 841(a) which support a broad construction of the offense).

States v. Ramos, 666 F.2d 469, 475-76 (11th Cir. 1982); United States v. Felts, 497 F.2d 80, 82 (5th Cir.), cert. denied., 419 U.S. 1051 (1974); see also United States v. Snow, 537 F.2d 1166, 1169 (4th Cir. 1976) (finding sufficient evidence of a constructive transfer to establish a delivery when the defendant's involvement included contacting the seller and bringing the seller and buyer together, but not touching the drugs or money in the exchange). To establish constructive possession, the government must show ownership, dominion, or control over a controlled substance. United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992); see also United States v. Herder, 594 F.3d 352, 358 (4th Cir. 2010).

Here, Rock's "acquiescence," in the form of permitting Manuel to keep some of the heroin obtained during the July 20, 2016 controlled buy, is evidence of a constructive transfer of drugs. At trial, Manuel testified that Rock was involved in all the controlled buys he executed for the SCAD Unit, and that Rock seemed to be in charge because he "was always the one setting everything up, always telling everybody where to go . . . directing the situation, and the deals" (Dkt. No. 50 at 127-28). Hutson testified that Rock was his supervisor during the July 20, 2016 controlled buy. (Dkt. No. 50 at 207).

The government's evidence at trial further established that,

8

in July of 2016, Rock led the SCAD Unit's covert operations and, accordingly, oversaw all controlled buys for the SCAD Unit (Dkt. No. 50 at 116, 243, 252, 351, 352, 401, 552). And there is no dispute that Rock was present at the controlled buy on July 20, 2016, or that he handled the money and paperwork for it. Thus, there was substantial evidence adduced that Rock had control over, and thus constructive possession of, the heroin Manuel purchased from Whitaker.

Moreover, the following testimony at trial established that Rock transferred this control to Manuel. When the government specifically asked Manuel, "Did Tim Rock give you a portion of the heroin when you purchased it from Whitaker?," he replied, "Yeah, every time" (Dkt. No. 50 at 135). This is in addition to Manuel's general testimony that, when Rock paid him with heroin stamps, "[a] few of the times he would--he'd given them to me himself. Usually he would tell me to take them out before I handed them to him" (Dkt. No. 50 at 130).

Importantly, Manuel's testimony was corroborated by the testimony of Chase Snyder, another SCAD Unit officer, who overheard a conversation between Rock and Manuel regarding payment for controlled buys in the form of drugs (Dkt. No. 50 at 354-56). Thus, the evidence at trial was sufficient to support a finding by the

jury that, when Rock gave Manuel permission to "pinch" drugs from the July 20, 2016 controlled buy, he was exercising his authority to transfer constructive possession of heroin to Manuel.

Because a constructive transfer constitutes a delivery, there was sufficient evidence from which a jury could find that Rock's acquiescence to Manuel keeping some of the heroin stamps obtained from the controlled buy constituted a distribution of heroin as charged in Count One. 21 U.S.C. §§ 802(8), (11).

Furthermore, although not argued by the government in its response to Rock's motion, in order to sustain a conviction under 21 U.S.C. § 841(a)(1), the government did not have to prove that Rock actually or constructively possessed the heroin. This is so because the evidence established that he enabled Manuel to keep the drugs after the controlled buy. Indeed:

> Although distribution may involve the actual or constructive possession of a controlled substance, 'distribution' includes other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price. Thus, it is possible to commit the 'distribution' element of the crime without possessing the drugs themselves.

United States v. Colon, 268 F.3d 367, 377 (6th Cir. 2001); see also United States v. Rideout, 80 F. App'x. 836, 838 (4th Cir. 2003) (per curiam) (quoting Colon, 268 F.3d at 377 and explaining that

someone who contributes to a drug transaction can be guilty of distribution without ever having possessed the controlled substance, constructively or otherwise); see, e.g., United States v. Davis, 564 F.2d 840, 845 (9th Cir. 1977) (explaining that "creating the means by which controlled substances can be transferred" constitutes a distribution).

In sum, under ay theory, the substantial evidence at trial established that Rock participated in the transfer of heroin to Manuel, both through his coordination of the controlled buy itself, and also by permitting Manuel to keep heroin from the controlled buy. Notwithstanding his assertion that he never touched the heroin or possessed it, Rock did far more than merely acquiesce in Manuel's possession of heroin. His prior permission to Manuel to "pinch" created the means by which heroin was distributed to Manuel separate and apart from the transfer from Whitaker to Manuel that occurred during the controlled buy.

## IV. CONCLUSION

In conclusion, there was sufficient evidence adduced at trial for a rational trier of fact to conclude beyond a reasonable doubt that Rock distributed heroin on July 20, 2016 as charged in Count One of the Indictment. The Court therefore **DENIES** Rocks's motion for new trial or, in the alternative, judgment of acquittal (Dkt.

No. 54).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: February 14, 2020.

                                   /s/ Irene M. Keeley
                                   IRENE M. KEELEY
                                   UNITED STATES DISTRICT JUDGE